# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) **Case No. 4:19-cv-00715** |
| v. | ) ) ) |
| ADVOCARE INTERNATIONAL, L.P., a limited partnership, | ) ) ) ) |
| BRIAN CONNOLLY, | ) ) |
| DANNY McDANIEL, | ) ) |
| DIANE McDANIEL, | ) ) |
| CARLTON HARDMAN, and | ) ) |
| LISA HARDMAN, | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF FEDERAL TRADE COMMISSION'S
SURREPLY IN FURTHER OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................................................ ii

**I.   The FTC Properly Pled its "Reason to Believe" Determination and is Not Required to Publish a Standard for "Reason to Believe" or "About to Violate"** ................................. 1

**II.  Although the FTC Need Not Prove Scienter, its Complaint Establishes Scienter** .......... 7

**III. Rule 9(b)'s Pleading Standard does not Apply, but the Complaint Satisfies It**………...8

**IV. Monetary Relief is Available under Section 13(b) of the FTC Act**....................................9

**V.  Conclusion**………………………………………………………………………………10

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) …............................................................................................ 7

*BCCA Appeal Grp. v. EPA,*
　355 F.3d 817 (5th Cir. 2003) …............................................................................. 4

*Chevron U.S.A., Inc. v. NRDC,*
　467 U.S. 837 (1984) …........................................................................................... 4

*FDIC v. Dixon,*
　835 F.2d 554 (5th Cir. 1987) …............................................................................. 9

*FTC v. BurnLounge, Inc.,*
　753 F.3d 878 (9th Cir. 2014) …............................................................................. 10

*FTC v. Communidyne, Inc.,*
　No. 93 C 6043, 1993 WL 558754, at *2 (N.D. Ill. Dec. 3, 1993) …....................... 8

*FTC v. Credit Bureau Ctr., LLC,*
　2019 U.S. App. LEXIS 24931 (7th Cir. August 21, 2019) …................................ 8

*FTC v. Evans Prod. Co.,*
　775 F.2d 1084, 1087 (9th Cir. 1985) …................................................................. 8

*FTC v. Freecom Commc'ns, Inc.,*
　401 F.3d 1192, 1204(10th Cir. 2005) …................................................................ 8

*FTC v. Hornbeam Special Situations, LLC,*
　391 F. Supp. 3d 1218 (N.D. Ga. 2019) …............................................................. 4, 8

*FTC v. Publ'g Clearing House, Inc.,*
　104 F.3d 1168 (9th Cir. 1997) …........................................................................... 4

*FTC v. Ross,*
　743 F.3d 886 (4th Cir. 2014) …............................................................................. 8

*FTC v. Shire Viropharma, Inc.,*
　917 F.3d 147 (3rd Cir. 2019) …............................................................................. 6,7

*FTC v. Stefanchik,*
　559 F.3d 924 (9th Cir. 2009) …............................................................................. 7

*FTC v. Student Aid Ctr., Inc.,*

281 F. Supp. 3d 1324 (S.D. Fla. 2016) …..................................................................................

*FTC v. Vemma Nutrition Co.*,
   No. CV-15-01578-PHX-JJT, 2015 WL 11118111, at *3 (D. Ariz. Sept. 18, 2015) ................ 7

*In the Matter of Koscot Interplanetary, Inc., et al.*,
   86 F.T.C. 1106 (1975) …........................................................................................................ 9

*Nicholson v. Brown,*
   599 F.2d 639 (5th Cir. 1979) …............................................................................................. 10

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946) …........................................................................................................... 9

*SEC v. Blatt*,
   583 F.2d 1325 (5th Cir. 1978) …................................................................................... 6, 7, 10

*SEC v. First Fin. Grp. of Texas*,
   645 F.2d 429 (5th Cir. 1981).................................................................................................. 9

*Torres v. S.G.E. Mgmt., L.L.C.*,
   838 F.3d 629 (5th Cir. 2016) ................................................................................................ 10

*Tuchman v. DSC Commc'ns Corp.*,
   14 F.3d 1061 (5th Cir. 1994).................................................................................................. 8

*Turner v. FTC*,
   580 F.2d 701 (D.C.Cir.1978) ................................................................................................. 2

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ............................................................................................................... 4

*US v. Gold Unlimited, Inc.*,
   177 F.3d 472 (6th Cir. 1999) ................................................................................................. 8

*Webster v. Omnitrition Int'l, Inc.*,
   79 F.3d 776 (9th Cir. 1996) ................................................................................................... 2

## **Statutes**
15 U.S.C. § 53(b) ........................................................................................................................ 4

5 U.S.C.A. § 552  ........................................................................................................................ 2

## **Other Authorities**
84 Fed. Reg. 55235...................................................................................................................... 2
                                                                                                                                            2

84 Fed. Reg. 55239..........................................................................................................................

Fed. R. Civ. P. 9(b) ................................................................................................................    8

In their Reply Brief, Dkt. 20,[1] Defendants Danny and Diane McDaniel ("Defendants") make short shrift of controlling Fifth Circuit case law and rely on aberrant, out-of-circuit decisions. They ignore the FTC arguments relating to its discretion to determine "reason to believe," the meaning of "about to violate," and the availability of monetary relief under Section 13(b) of the FTC Act. They introduce new arguments to require the FTC to publish standards before it can determine reason to believe; prove scienter; and meet Fed. R. Civ. P. 9(b)'s elevated pleading standard.[2] Defendants are wrong in each of their arguments.

I.      **The FTC Properly Pled its "Reason to Believe" Determination and is Not Required to Publish a Standard for "Reason to Believe" or "About to Violate"**

Defendants do not refute that the determination of "reason to believe" is for the FTC to make or that it is reviewable only for abuse of discretion. Instead, they argue that the FTC failed to demonstrate that it has such a standard, that the FTC's standard is "undisclosed," and that this is prohibited by unspecified provisions of recent Executive Orders. Dkt. 20 at 2. The FTC is not required to publish a standard; it is required to determine if it has reason to believe, and the issue before the Court is whether the FTC's Complaint establishes that the FTC properly made this determination.

To begin, Executive Order 13891, "Promoting the Rule of Law Through Improved Agency Guidance Documents," does not apply to independent agencies such as the FTC.[3]

---

[1] The McDaniels object that the FTC did not timely file its Response. Dkt. 19. The FTC filed timely and sought to correct an issue in its response. Following clerk instructions, the FTC refiled the Response after the clerk rejected the initial filing.

[2] The FTC is concurrently filing a motion to strike addressing the McDaniels' (a) reliance on evidence outside the pleadings and (b) failure to adhere to Local Rule CV-7(f)'s provision that items in reply briefs be limited to issues raised in the other party's response.

[3] Executive Order 13891 section 2(a) defines "agency" as having the meaning given in section 3(b) of Executive Order 12866, "Regulatory Planning and Review." Executive Order 12866 defines "agency" as "any authority of the United States that is an ''agency' under 44 U.S.C. 3502(1), other than those considered to be independent regulatory agencies, as defined in 44

Executive Order 13892, "Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication," which does apply to independent agencies, primarily concerns the force of agency guidance documents, stating that agencies "must establish a violation of law by applying statutes or regulations" and "may not treat noncompliance with a standard of conduct announced solely in a guidance document as itself a violation of applicable statutes or regulations." 84 Fed. Reg. 55239, 55240 (Oct. 9, 2019). The applicable Executive Order also provides that "[w]hen an agency . . . engages in adjudication, or otherwise makes a determination that has legal consequence for a person, it may apply only standards of conduct that have been publicly stated in a manner that would not cause unfair surprise." *Id.* at 55241. The FTC has alleged here that the defendants have violated Section 5 of the FTC Act—not that the defendants have violated unpublished guidance provided by the FTC. This is no novel issue: decades of case law have defined deceptive practices in violation of Section 5 as those practices likely to deceive consumers acting reasonably under the circumstances.[4] For decades, courts have concluded that pyramid schemes,[5] false income claims,[6] and providing the means and

---

U.S.C. 3502(10)." That definition, now codified at 44 U.S.C. § 3502(5), lists the FTC as an "independent regulatory agency."

[4] *See, e.g.*, *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000); *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984); *United States v. Commercial Recovery Sys., Inc.*, 179 F. Supp. 3d 728, 734 (E.D. Tex. 2016)

[5] *See* the pyramid standard announced in *In the Matter of Koscot Interplanetary, Inc., et al.*, 86 F.T.C. 1106 (1975), *aff'd mem. sub nom.*, *Turner v. FTC*, 580 F.2d 701 (D.C.Cir.1978) and *infra*, Section IV, n.23 for cases applying this test.

[6] *See, e.g.*, *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005); *Goodman v. FTC*, 244 F.2d 584, 598 (9th Cir. 1957); *FTC v. John Beck Amazing Profits*, LLC, No. 2:09-CV-4719-FMC-FFM, 2009 WL 7844076, at *12 (C.D. Cal. Nov. 17, 2009); *FTC v. Patriot Alcohol Testers, Inc.*, 798 F. Supp. 851, 855-56 (D. Mass. 1992).

instrumentalities to deceive[7] violate the FTC Act.  The FTC is not using violation of a "guidance document as itself a violation of applicable statutes or regulations."  Moreover, the Supreme Court has made clear that the FTC averring that it has "reason to believe" a violation of a statute it enforces has occurred has no legal force other than to initiate legal proceedings. *FTC v. Std. Oil Co.*, 449 U.S. 232, 241-42 (1980).  Finally, Section 11(c) of Executive Order 13892 provides that the Order does not "create any right or benefit, substantive or procedural, enforceable" in court against agencies. Therefore, the FTC's averment of reason to believe Defendants are violating or about to violate the FTC Act is not within the applicable Executive Order, and the Executive Order provides no defense for which relief may be granted.

Defendants also argue that the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requires the FTC to formulate and publish rules for its understanding of "about to violate." Dkt. 20 at 2. What FOIA actually requires is the publication of "substantive rules of general applicability" and "statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). "[S]ubstantive rules . . . are those which create law." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001). FOIA does not require any publication here because the Commission's determination of "about to violate" "[does] not change any existing law or policy" or "remove any previously existing rights." *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983). It also does not "substantively alter[] the weight and sufficiency of evidence" required for the Commission to obtain injunctive relief. *La Union del Pueblo Entero v. FEMA*, 141 F. Supp. 3d 681, 712 (S.D. Tex. 2015). And it is not a policy the agency has formulated or adopted. "About to violate" is

---

[7] *See, e.g.*, *FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 494, 42 S. Ct. 384, 386, 66 L. Ed. 729 (1922); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 531 (S.D.N.Y. 2000); *FTC v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1090 (C.D. Cal. 1994).

simply part of the "reason to believe" determination the Commission makes in accordance with statute before suing.[8]

Defendants next argue that "in order for a determination by the FTC as to the proper statutory interpretation of 'about to violate the law' to be entitled to any deference, the FTC would necessarily have to promulgate its interpretation through its statutory rule-making process." Dkt. 20 at 2, n.5. Defendants cite cases about judicial deference to an agency's interpretation of a statute it administers when Congress is silent on an issue. *See BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 824–25 (5th Cir. 2003) ("If Congress 'has directly spoken to the precise question at issue,' the agency and the court 'must give effect to the unambiguously expressed intent of Congress.' If the statute, however, is 'silent or ambiguous with respect to the specific issue,' the court must first assess the administrative decision-making process itself to determine whether the agency's action is entitled to *Chevron* deference.") (quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984) and *United States v. Mead Corp.*, 533 U.S. 218, 226–31 (2001)). "Reason to believe" in Section 13(b) expressly vests the FTC with authority to determine whether to initiate a lawsuit; this forms the basis for limited judicial review. Thus, courts have long held that the FTC "has full discretion in deciding . . . what evidence is sufficient for a 'reason to believe' determination,"[9] that "'reason to believe' is unreviewable" because it is "committed to the FTC's discretion,"[10] and that reason to believe requires only that the FTC "has conducted an investigation . . . ."[11]

---

[8] The meaning of "is . . . or about to . . ." has been developed by courts. *See* Dkt. 19 and 10–12.
[9] *Boise Cascade Corp. v. FTC*, 498 F. Supp. 772, 779 (D. Del. 1980).
[10] *Standard Oil Co. of California v. FTC*, 596 F.2d 1381, 1383 (9th Cir. 1979), *rev'd on other grounds*, 449 U.S. 232 (1980).
[11] *AMREP Corp. v. FTC*, 768 F.2d 1171, 1177 (10th Cir. 1985); *see also FTC v. Hornbeam Special Situations, LLC*, 391 F. Supp. 3d 1218, 1223 (N.D. Ga. 2019) ("15 U.S.C. § 53(b) . . . provides that the FTC may bring suit . . . '[w]henever the Commission has reason to believe' the

Conversely, Defendants argue—citing *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147 (3rd Cir. 2019)—that "[t]he question is whether the FTC has plausibly alleged that Defendants are 'about to violate' the FTC Act now." Dkt. 20 at 3. In its Response, the FTC noted that *Shire* "did not consider the FTC's discretion under Section 13(b) 'reason to believe' provision" because the FTC did not timely raise the issue. Dkt. 19 at 9. The FTC also noted that courts evaluating "reason to believe" after *Shire* have held it confers discretion or have declined to reach the issue because the FTC pled facts sufficient to show it had reason to believe conduct was likely to recur. *Id.* The FTC also noted the Fifth Circuit has held that "is . . . or about to . . ." under the Securities Act of 1933 is shown "with proof of past substantive violations that indicate a reasonable likelihood of future substantive violations." *Id.* (citing *SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 434 (5th Cir. 1981)). Defendants ignore these points and reassert an imminence standard for "about to violate," citing Thesaurus.com as authority. Dkt. 20 at 7.

Defendants also argue that the Complaint fails to establish a violation is about to occur no matter what standard applies. Dkt. 20 at 2–3. The Court should reject this argument. Section 13(b) tasks the FTC with determining when it has reason to believe a violation is occurring or is about to occur, and the Complaint shows the FTC made this determination properly.[12] The FTC's reason to believe a party "is . . . or about to . . ." determination should be evaluated in light of the Fifth Circuit's holding that "is . . . or about to . . ." under the Securities Act of 1933 is shown through likelihood of recurrence. *First Fin. Grp. of Texas*, 645 F.2d at 434. Factors in this

---

law is about to be violated. . . . The standard . . . is not necessarily an objective one. If there was some information . . . that the FTC's motive . . . was merely vindictive, or if the Complaint did not contain any factual allegations from which to infer that the law was about to be violated, then the FTC would clearly lack a 'reason to believe' and dismissal would be proper. Here, however, the FTC has alleged facts about past bad behavior which includes a pattern of reoccurrence.").

[12] *See supra*, Section I, n.9, n.10, n.11. *See also Standard Oil*, 596 F.2d at 1386 ("[R]eview is limited. It cannot extend to . . . what constitutes 'reason to believe' but simply whether the FTC disregarded the mandate and restriction of 15 U.S.C. s 45(b)" by not making a determination).

analysis include the egregiousness of the conduct, whether it was isolated or recurring, the degree of scienter involved,[13] the sincerity of any assurances against future violations, recognition of the wrongful nature of the conduct, and the likelihood of opportunities for future violations. *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978).

The Complaint details the egregiousness of Defendants' conduct in creating deceptive material that was accessed tens of thousands of times and pressuring recruits to take financial risks by purchasing large volumes of product. Dkt. 1 ¶¶ 35, 52, 54-55. The Complaint notes the recurrent nature of Defendants' conduct, with examples from each year between 2012 and 2018. Dkt. 1 ¶¶ 22, 27, 30, 35, 52, 54-55, 60, 67, 72. The Complaint notes that Defendants intentionally used deceptive earnings representations and knew that the only way to build an organization with value was by recruiting business opportunity participants. Dkt. 1 ¶¶ 27, 60, 67, 72. The Complaint also notes that Defendants did not acknowledge the wrongful nature of their acts or provide assurances against future violations. Dkt. ¶ 72(f). Finally, the Complaint notes that Defendants continued to violate the law until forced to stop by the FTC's settlement with AdvoCare and that Defendants have both opportunity and motive to continue violating the law. Dkt. 1 ¶ 72. These allegations show that the FTC properly exercised its discretion in determining it had reason to believe Defendants were violating or were about to violate the law.[14]

---

[13] *See supra,* Section II, addressing scienter and the requisite knowledge under the FTC Act. Applied to the FTC Act, this factor should concern mental state without requiring scienter.
[14] Notably, the McDaniels' attacks on the complaint are inaccurate. They claim that the Complaint mentions materials that were on the McDaniels' website "until December 2016 and April 2017" Dkt. 20 at 4, but the Complaint alleges these materials were on the McDaniels' website until "at least" December 2016 and April 2017 and provides no basis to believe the McDaniels did not thereafter use the materials. Dkt. 1 ¶ 22(g), (h). The McDaniels claim paragraphs alleging conduct from between 2012 and 2015 show that "such conduct . . . ceased prior to the commencement of the FTC's investigation . . . ." Dkt. 20 at 4. These examples show that violations were routine for at least seven years—not that they ceased. Finally, the McDaniels claim that "bonuses" they offered are "very common practice" and do not show a violation of the

## II. Although the FTC Need Not Prove Scienter, its Complaint Establishes Scienter

Defendants claim that the FTC has failed to show "scienter . . . a mental state embracing intent to deceive, manipulate, or defraud." Dkt. 20 at 5 (quoting *SEC v. Blatt*, 583 F.2d 1325, 1333 (5th Cir. 1978)). Defendants rely on SEC cases, where scienter is "an element of the substantive violation . . . ." *First Fin. Grp. of Texas*, 645 F.2d at 435. Crucially, an individual can be held liable for injunctive relief under the FTC Act if they participated in the acts or had authority to control them. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997).[15] While the FTC must show knowledge to obtain monetary relief, knowledge is established by showing an individual knew of the misrepresentations, was recklessly indifferent to their veracity, or was aware of a high probability of fraud and avoided the truth. *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009); *FTC v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014).[16]

Even so, Plaintiff's Complaint establishes scienter. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[K]nowing conduct satisfies the scienter requirement." *Blatt*, 583 F.2d at 1334. The Complaint shows the Defendants knew the difference between what they marketed and the reality of AdvoCare's business. The allegations show Defendants' knew AdvoCare "disguised" itself and knew the "real" way to earn money. Dkt. 1 ¶ 67. They show Defendants' efforts to scare

---

FTC Act. Dkt. 20 at 4. The first "bonus" shows that the McDaniels "trained and encouraged Distributors to personally purchase products." Dkt. 1 ¶ 54. The second "bonus" shows they promised to pay a participant to order product to help them maximize their own bonus"; *i.e.*, the McDaniels sought income from purchases unrelated to sales to end users. Dkt. 1 ¶ 55.

[15] *See also Commercial Recovery Sys.*, 179 F. Supp. 3d at 736 (stating government may show participation or control to obtain an injunction for violation of FTC Act).

[16] *See also FTC v. WebSource Media, LLC*, No. CIV.A. H-06-1980, 2007 WL 5463511, at *2 (S.D. Tex. July 2, 2007) (same); *Freecom Commc'ns*, 401 F.3d at 1204 (FTC need not prove scienter"); *Publ'g Clearing House, Inc.*, 104 F.3d at 1171 (FTC need not show intent to defraud).

consumers that they will miss the next Nike or Microsoft by not joining AdvoCare. Dkt. 1 ¶ 32. They show that Defendants called AdvoCare's products a "fallback" to dissuade participants from retailing. Dkt. 1 ¶ 67. They show that Defendants sought to convince participants to buy products even absent end user demand. Dkt. 1 ¶ 54. They show that Defendants contrived downline volume to increase their pay. Dkt. 1 ¶ 55. They show that Defendants believed Distributors had "no value" unless they became Advisors. Dkt. 1 ¶ 60. The allegations show knowing conduct and establish scienter.

### III.     Rule 9(b)'s Pleading Standard does not Apply, but the Complaint Satisfies It

Defendants claim the FTC presents this as a "routine fraud case" and that the Complaint does not plead the particularity required by FED. R. CIV. P. 9(b). Dkt. 20 at 9. Section 13(b) permanent injunction actions are not limited to routine fraud cases,[17] and the FTC never argued this is such a case. Moreover, "[a Section 5] claim simply is not a claim of fraud . . . as contemplated by Rule 9(b)" as "the FTC need not prove scienter, reliance, or injury . . . ."[18] Nonetheless, the Complaint satisfies the 9(b) standard. The Complaint identified speakers, content, time, place, format, and explained how Defendants benefitted from the representations[19]—*e.g.*, that representations were made to induce personal purchasing, discourage retailing, and convince prospects they would earn money from AdvoCare. Dkt. 1, ¶¶ 27, 31, 54, 67.

---

[17] *See FTC v. Evans Prod. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) ("[A]ttempting to limit § 13(b) to . . . 'routine fraud' . . . misreads both the case law . . . and the legislative history.").
[18] *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 (10th Cir. 2005). *See also FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016); *Hornbeam*, 308 F. Supp. 3d 1280; *FTC v. Skybiz.com, Inc.*, No. 01-CV-396-K(E), 2001 WL 1673649, at *4, n.6 (N.D. Okla. Aug. 2, 2001); *FTC v. Communidyne, Inc.*, No. 93 C 6043, 1993 WL 558754, at *2 (N.D. Ill. Dec. 3, 1993); and *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 388 (D. Md. 2009).
[19] *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (stating Rule 9(b) requires plaintiff to plead time, place, speaker, and content of, and benefit from representations).

**IV.     Monetary Relief is Available under Section 13(b) of the FTC Act**

In its Response, Dkt. 19, the FTC noted that the Fifth Circuit has held it is "indisputably clear that a grant of jurisdiction such as that contained in Section 13(b) carries with it the authorization for the district court to exercise the full range of equitable remedies traditionally available to it," *FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 718 (5th Cir. 1982).[20] *Sunsites* relied on *Porter v. Warner Holding Co.*, 328 U.S. 395, 397–98 (1946),'s holding that when a statute invokes a court's equitable powers, "all the inherent equitable powers . . . are available for the . . . complete exercise of that jurisdiction" unless curtailed by the statute. Rather than confront *Sunsites*, Defendants simply state the case arose out of Section 13(b)'s first proviso. Dkt. 20 at 8. Defendants state *Sunsites* "evaluated the FTC's authority in the context of the entire FTC Act," Dkt. 20 at 8, but do not explain why the court, conducting this extensive analysis, did not mean what it stated in holding it "indisputably clear" that Section 13(b) authorizes "the district court to exercise the full range of equitable remedies." *Sunsites*, 665 F.2d at 718. Instead, Defendants return to *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764 (7th Cir. August 21, 2019) ("*CBC*"), eliding the Fifth Circuit's understanding of Section 13(b) in favor of the Seventh Circuit's.[21] Defendants cite *CBC* to argue that advance notice is a crucial requirement of Section 19 whose absence from Section 13(b) shows that monetary relief is not available under Section 13(b). They argue the instant case shows why notice is required, calling pyramid law a "moving target which provides advance notice to no one." Dkt. 19 at 9. In reality, this case shows why monetary relief

---

[20] The Fifth Circuit cited Section 13(b) as its example of extrapolating the full range of equitable remedies when some are invoked. *FDIC v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987).
[21] The McDaniels claim the FTC ignores *CBC*'s rationale, but Sections III.C.2 and 3 of the Response address *CBC*, arguing that the McDaniels misread *CBC*'s discussion of the second proviso (Dkt. 19 at 24); explaining the inapplicability of the case the *CBC* court held curtailed *Porter*, the backbone of *Sunsites* (*Id.* at 25–26); refuting *CBC*'s analysis of Section 19's saving clause (*Id.* at 20); and explaining the relationship of Sections 13(b) and 19 to show that *CBC* was wrong that "monetary relief under Section 13(b) would nullify Section 19" (*Id.* at 21–22).

9

is available under Section 13(b). The FTC brings this case under Section 13(b), having announced its pyramid standard in *Koscot,* an administrative action, 44 years ago.[22] Courts have since embraced *Koscot* in Commission cases, private suits, and criminal prosecutions.[23] Thus, the law is clear and "resources [are] better utilized" via Section 13(b). S. Rep. 93-151, 30-31.

Defendants also wrongly rely on the fact that the FTC has not defined pyramids through a rule. Dkt. 20 at 9. An administrative agency may use enforcement actions or rulemaking to announce new rules.[24] The choice lies primarily in the agency's discretion.[25]

Finally, Defendants' argument that disgorgement is a punitive remedy rather than equitable relief, and that the FTC reads into Section 13(b) remedies prohibited under Section 19 (Dkt. 17 at 23), fails. The Fifth Circuit recently reaffirmed its holding in *Blatt*, 583 F.2d at 1335, that disgorgement is within a court's equitable powers. *SEC v. Team Res. Inc.*, No. 18-10931, 2019 WL 5704525, at *4 (5th Cir. Nov. 5, 2019).

## V. Conclusion

For the reasons stated above and in the FTC's Response to Defendants' Motion to Dismiss (Dkt. 19), the FTC requests the Court deny Defendants' Motion to Dismiss.

---

[22] *Koscot*, 86 F.T.C. 1106. "[Pyramid] schemes are characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users."

[23] *See, e.g.*, *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 782 (9th Cir. 1996) (adopting *Koscot*); *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 884 (9th Cir. 2014) (applying *Koscot*); *FTC v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2015 WL 11118111, at *3 (D. Ariz. Sept. 18, 2015) (same); *US v. Gold Unlimited, Inc.*, 177 F.3d 472, 481 (6th Cir. 1999) (upholding criminal conviction for pyramid scheme where jury instructions tracked *Koscot*); *Torres v. S.G.E. Mgmt., L.L.C.,* 838 F.3d 629, 639 (5th Cir. 2016)(approvingly quoting *Koscot* as the FTC's instruction on what constitutes a pyramid scheme).

[24] *See Nicholson v. Brown*, 599 F.2d 639, 648 (5th Cir. 1979)("[An] administrative agency . . . may at its discretion announce and apply new rules in an adjudicative proceeding.").

[25] *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947).

                    Respectfully submitted,

                    Alden F. Abbott
                    General Counsel

Dated:   November 18, 2019        /s/ Aaron Haberman
                    AARON HABERMAN
                    Texas Bar No. 24092468
                    M. HASAN AIJAZ
                    Virginia Bar No. 80073
                    THOMAS B. CARTER
                    Texas Bar No. 03932300

                    Federal Trade Commission
                    1999 Bryan Street, Suite 2150
                    Dallas, Texas 75201
                    (202) 326-3633; ahaberman@ftc.gov
                    (214) 979-9386; maijaz@ftc.gov
                    (214) 979-9372; tcarter@ftc.gov
                    Attorneys for Plaintiff
                    FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

      The undersigned Plaintiff's Counsel, Aaron Haberman, certifies that this Surreply was served on counsel of record for all Defendants on November 18, 2019, through this Court's ECF system at the time of this filing.

      /s/ Aaron Haberman