UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FEDERAL TRADE COMMISSION   §
  §
v.   §    CIVIL NO. 4:19-CV-715-SDJ
  §
ADVOCARE INTERNATIONAL, L.P.,   §
ET AL.   §

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions: Defendants' Motion to Dismiss for failure to state a claim filed by Defendants Danny McDaniel and Diane McDaniel ("the McDaniels") pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. #17), and Plaintiff's Motion to Exclude, (Dkt. #23), certain factual allegations, documents, and legal arguments included in the McDaniels' Reply Brief, (Dkt. #20). For the following reasons, the Court **GRANTS** the McDaniels' Motion to Dismiss, (Dkt. #17), and **DENIES as moot** Plaintiff's Motion to Exclude, (Dkt. #23).

### I. BACKGROUND

In March 2017, consumers filed a class-action lawsuit in the Northern District of Texas against AdvoCare International, L.P. ("AdvoCare"), alleging that AdvoCare had been operating as an illegal pyramid scheme. *Ranieri v. AdvoCare Int'l, L.P.*, No. 3:17-cv-00691-B, 2017 WL 947224 (N.D. Tex. Mar. 9, 2017); *see also* (Dkt. #1 at 25, #17 at 12). That suit named, among others, Danny McDaniel—but not his wife, Diane McDaniel—as a defendant. *Ranieri*, 2017 WL 947224. However, the district court ultimately dismissed with prejudice the action against Danny McDaniel, holding that if AdvoCare indeed operated an illegal pyramid scheme, Danny McDaniel did not

1

Case 4:19-cv-00715-SDJ   Document 52   Filed 11/16/20   Page 2 of 15 PageID #:  870


operate said scheme. *Ranieri v. AdvoCare Int'l, L.P.*, 336 F.Supp.3d 701, 718 (N.D. Tex. 2018);[1] *see also* (Dkt. #17 at 12).

Separately, the Federal Trade Commission ("FTC" or "Commission") began investigating AdvoCare for potential violations of consumer-protection law. (Dkt. #1 at 25). In July 2019, during negotiations with the FTC, AdvoCare terminated its "multi-level marketing" ("MLM") program, which was alleged to be an illegal pyramid scheme. (Dkt. #1 at 25–26).

On October 2, 2019, the FTC brought a complaint in this Court requesting a permanent injunction and other equitable relief against AdvoCare and at least five individual members thereof, including the McDaniels. (Dkt. #1). The Complaint alleges that Defendants engaged in unlawful business practices in violation of the Federal Trade Commission Act, 15 U.S.C. § 41 et seq. *See, e.g.*, (Dkt. #1 at 26). In particular, the Complaint alleges that AdvoCare—which the FTC describes as "a multi-level marketing company that promotes health and wellness products"—deceived individuals into becoming "Distributors" and "Advisors," or salespeople for AdvoCare, the majority of whom never earned compensation for their sales. (Dkt. #1 at 4–6). The Complaint further alleges that Defendants consistently and deceptively portrayed AdvoCare as a "life-changing financial solution," (Dkt. #1 at 6–9), and trained recruits to do the same, (Dkt. #1 at 9). The Complaint thus asserts that AdvoCare operated an unlawful pyramid scheme whereby AdvoCare's compensation

---

[1] "In the instant case, Plaintiffs have not shown that creating and disseminating promotional materials . . . caused Plaintiffs' injuries, and they have not shown that the Individual Defendants operated the alleged pyramid scheme . . . ." *Id.*

2

structure relied on the fraudulent recruitment of Distributors and Advisors who would unwittingly pass on profits to those higher up the chain of command. (Dkt. #1 at 16–23).

Simultaneous to, or immediately after, the FTC's filing of the Complaint, on October 2, 2019, all named Defendants—except for the McDaniels—reached a settlement agreement with the FTC. (Dkt. #2, #2-1, #2-2). Pursuant to the settlement agreement, the settling Defendants, including AdvoCare, submitted to a host of sanctions, including an outright ban on: multi-level marketing; operating "chain referral" programs or similar schemes; managing compensation for any business ventures unless certain criteria are satisfied; and making material misrepresentations regarding any business venture. (Dkt. #2-2 at 3–5, #15, #16). The settling Defendants also agreed to (a) provide equitable monetary relief and payment to the Commission, (b) cooperate in the settlement, and (c) record progress while otherwise submitting to wide-reaching compliance monitoring. (Dkt. #2-2 at 5–16, #15, #16). The FTC has continued to pursue the instant action against the McDaniels, which the McDaniels now move to dismiss under Rule 12(b)(6).

## II. LEGAL STANDARD

Under the relaxed pleading standards of Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement requires only that the plaintiff provide "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007). The Supreme Court has instructed that plausibility, under *Twombly*, means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* To determine whether the plaintiff has pleaded enough to "nudge[] [its] claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id.* at 679–80 (first quoting *Twombly*, 550 U.S. at 570, then citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2nd Cir. 2007)) (internal quotation marks omitted). This threshold is surpassed when "a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Further, when evaluating a Rule 12(b)(6) motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). However, a district court may also consider any "matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). Courts have taken judicial notice of the existence and content of settlement agreements when evaluating Rule

4

12(b)(6) motions to dismiss. *See, e.g., ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008 n.2 (9th Cir. 2014) (holding that because the settlement agreement was filed with the court and is a publicly available record, it is properly subject to judicial notice and thus may be considered on a Rule 12(b)(6) motion); *Estate of Brown v. Arc Music Grp.*, 523 F.App'x 407, 410 (7th Cir. 2013) (holding that the settlement agreement was a public record, of which the court could take judicial notice without converting the motion into one for summary judgment). Finally, a court may take judicial notice sua sponte. FED. R. CIV. P. 201(c)(1).

Here, the Court takes judicial notice of the settlement agreement between Plaintiff and all Defendants to the instant action besides the McDaniels, (Dkt. #2, #15, #16).[2] The Court thus considers the existence and content of the settlement agreement in its analysis.

## III. DISCUSSION

### A. The FTC's Complaint is Not Exempt from the Pleading Standards Prescribed by the Federal Rules of Civil Procedure.

The Federal Trade Commission Act instructs the Commission to "prevent persons, partnerships, or corporations" from using "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). The Commission has "multiple instruments in its toolbox" to accomplish this statutory directive, among which are administrative proceedings and litigation in federal court. *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 155 (3d Cir. 2019).

---

[2] The Unopposed Motion for Settlement, (Dkt. #2), was filed with the Court the same day as the Complaint, (Dkt. #1), October 2, 2019, and the Court entered the stipulated orders, (Dkt. #15, #16), which collectively granted the motion, one week later.

As relevant here, Section 13(b) of the FTC Act empowers the FTC to "bring suit in a district court of the United States" to obtain a "temporary restraining order," a "preliminary injunction," or a "permanent injunction" against an "act or practice" that violates the FTC Act. 15 U.S.C. § 53(b). To bring such an action, the FTC must have "reason to believe" that the entity or person sued "is violating, or is about to violate" the Act. *Id.*

The McDaniels contend that the FTC's complaint must be dismissed under Rule 12(b)(6) because the Complaint fails to state a plausible claim under Section 13(b) that the McDaniels are violating or are "about to violate" the FTC Act. (Dkt. #17 at 6). Pointing to the FTC's Complaint itself, as well as the settlement agreement with AdvoCare and the other Defendants, the McDaniels assert that the FTC's suit recognizes that the alleged pyramid scheme operated by AdvoCare, and in which the McDaniels were allegedly involved, ended in July 2019. (Dkt. #17 at 7–8). The McDaniels further argue that there are no factual allegations supporting the FTC's conclusory contention that the McDaniels are presently violating the FTC Act or are "about to" violate the Act.[3]

---

[3] The McDaniels have not challenged the Court's jurisdiction in this matter. Although their dismissal motion included some language suggesting a potential jurisdiction argument, *see* (Dkt. #17 at 8), the substance of the McDaniels' motion and briefing asserts only a Rule 12(b)(6) motion for failure to state a claim and does not contest the Court's jurisdiction. *See* (Dkt. #20 at 1 n.3) (the McDaniels' reply brief affirms that they are not raising a jurisdictional challenge). In any event, the Court concludes that it has jurisdiction because the FTC's claim arises under a law of the United States, 15 U.S.C. § 53(b), and therefore falls within the general grant of jurisdiction in 28 U.S.C. § 1331. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (confirming that a plaintiff obtains the "basic statutory grant[ ]" of subject matter jurisdiction in 28 U.S.C. § 1331 by pleading a colorable claim that arises under the Constitution or the laws of the United States).

The FTC's first response to the McDaniels' motion is to suggest that, because the agency has already made its own, internal determination that it has "reason to believe" that the McDaniels are violating or are "about to violate" the FTC Act, the Complaint before the Court is largely immunized from judicial scrutiny under Rule 12(b)(6). The FTC states that "[t]he Commission's determination that there is sufficient 'reason to believe' under Section 13(b) is left to the agency's discretion." (Dkt. #19 at 5). The FTC goes on to cite and quote *Standard Oil Co. of California v. FTC*, 596 F.2d 1381, 1386 (9th Cir. 1979), *rev'd on other grounds*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), for the proposition that, "[i]f the district court finds as a fact that the FTC made the 'reason to believe' determination . . . further review would be foreclosed." (Dkt. #19 at 5). Ultimately, the FTC asserts that, rather than engaging in a straightforward application of pleading standards under Rule 8, the Court is bound to deny the McDaniels' Rule 12(b)(6) motion unless it concludes that the FTC "abused its discretion" in making its internal "reason to believe" determination. (Dkt. #19 at 12–13). According to the Commission, limiting the Court's analysis to an "abuse of discretion" standard "fits with the broad prosecutorial discretion federal agencies have to bring suit." (Dkt. #19 at 6).

The Court disagrees. Taken to its logical conclusion, the FTC's argument would mean that, no matter how insubstantial the factual allegations in an FTC complaint under Section 13(b), a court must accept that the complaint is sufficient to withstand a Rule 12(b) motion so long as the FTC avers that it has "reason to believe" that a defendant is "about to" engage in unfair methods of competition, or unfair or

7

deceptive acts or practices. The FTC's position is contrary to accepted rules of pleading and finds no support in applicable case law.

First, Rule 8(a) of the Federal Rules of Civil Procedure requires that anyone filing a complaint must include a statement demonstrating "the grounds for the court's jurisdiction" and a "showing that the pleader is entitled to relief." In a Section 13(b) case, that requirement includes factual allegations from the FTC that there exist reasons to believe that the defendant is violating or "is about to violate" the FTC Act.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A bare allegation by the FTC that "we have reason to believe that the defendant is about to violate the law," when unaccompanied by supporting factual allegations, clearly does not "state a claim to [injunctive] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This Court is fully capable of determining whether the FTC's factual allegations in a Section 13(b) complaint are sufficient to make the requisite "about-to-violate" showing. Therefore, there is no reason to conclude that Congress intended to eliminate judicial scrutiny under Rule 8.

The cases that the FTC cites do not support its argument that its internal, "reason to believe" determination is an effective "King's X" against a motion to dismiss a Section 13(b) complaint brought by the FTC in federal court. For example, *Standard Oil* addressed a challenge by an oil company to an administrative proceeding initiated by the FTC in connection with unfair trade practices. 596 F.2d

at 1384. The oil company's challenge, brought under the Administrative Procedure Act ("APA"), was rejected by the Ninth Circuit based on the court's determination that the FTC's commencement of an administrative proceeding was not subject to challenge under the APA. *Id*. at 1385. *Standard Oil* did not involve a lawsuit brought by the FTC and it says nothing about deference to the FTC in cases in which the FTC, as the plaintiff in federal court, bears the threshold burden to meet the requirements of Rule 8 and state a claim for relief that is plausible on its face.

The other cases cited by the FTC are equally unhelpful because they involve the inapposite circumstances of judicial review of agency action. *See Slough v. FTC*, 396 F.2d 870 (5th Cir. 1968) (suit seeking review of a cease and desist order issued by the FTC after an administrative hearing); *FTC v. Nat'l Urological Grp., Inc.*, No. 1:04-cv-3294-CAP, 2006 WL 8431977 (N.D. Ga. Jan. 9, 2006) (dismissing counterclaims brought under the APA challenging the FTC's decision to initiate a lawsuit); *Boise Cascade Corp. v. FTC*, 498 F.Supp. 772 (D. Del. 1980) (involving an APA action seeking an order that the FTC withdraw an administrative complaint).

Judicial review of agency action under the APA is governed by the APA itself, which expressly precludes judicial review of actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). No such review is at issue here. Instead, the McDaniels' motion raises a different issue: whether the FTC has stated a claim under the Federal Rules of Civil Procedure. The resolution of the McDaniels' motion is governed by Rule 8 of the Federal Rules of Civil Procedure, which mandates, rather than precludes, judicial review to ensure compliance with federal pleading requirements. "It is

precisely the Court's duty under Rule 8 to scrutinize a party's right to proceed in federal court." *FTC v. Hornbeam Special Situations, LLC*, No. 1:17-cv-3094-TCB, 2018 WL 6254580, at *4 (N.D. Ga. Oct. 15, 2018).

In sum, to avoid dismissal of its Section 13(b) action at the pleadings stage, the FTC must plausibly allege, in satisfaction of *Iqbal* and *Twombly*, that the McDaniels *are currently* violating the FTC Act *or are about to* do so.

## B. The FTC's Factual Allegations Pertain Only to *Past* Misconduct by the McDaniels and not to Present or Future Misconduct.

Section 13(b) of the FTC Act empowers the Commission to file a claim in federal court "[w]henever the Commission has reason to believe . . . that any person, partnership, or corporation *is violating*, or *is about to violate*, any provision of law enforced by the [FTC] . . . ." 15 U.S.C. § 53(b) (emphasis added). Section 13(b) thus unambiguously requires plausible factual allegations supporting a reasonable belief of present or future misconduct. *Shire*, 917 F.3d at 156–57 ("Section 13(b) requires that the FTC have reason to believe a wrongdoer 'is violating' or 'is about to violate' the law . . . . [T]his language is unambiguous; it prohibits existing or impending conduct . . . [and] does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation.").

In *Shire*, the conduct in question was five years past. Here, the McDaniels' past conduct is more recent; at the time the FTC filed the Complaint, only three months had passed since the McDaniels ceased their alleged misconduct. However, like in

*Shire*, the FTC identifies no ongoing misconduct and, in fact, appears to concede that the McDaniels' alleged misconduct continued only until July 2019.[4]

Further, even if the FTC had alleged ongoing or impending violations by the McDaniels, such allegations are implausible because, according to the FTC's own factual allegations, at the time the Complaint was filed, the primary mechanism of the McDaniels' alleged wrongdoing, the MLM program, had been permanently defunct for months. (Dkt. #1 at 26). Additionally, the sole business through which the McDaniels allegedly undertook such actions—AdvoCare—had, either before or simultaneous to the Complaint's filing, entered into a comprehensive agreement to halt AdvoCare's unlawful activities, reform its business practices, and submit to government compliance monitoring. (Dkt. #2, #2-1, #2-2).

The FTC has not alleged that the McDaniels are *currently* violating or *are about to* violate the law enforced by the FTC. Every factual allegation that the FTC presents refers to past misconduct by the McDaniels. Although this misconduct was extensive and longstanding—having taken place for "a period of more than 20 years"—all factual allegations indicate that the alleged violations ended entirely in July 2019 when AdvoCare's MLM program was permanently terminated. (Dkt. #1 at 25–26). And it is implausible that the McDaniels can commit ongoing violations because the MLM program is now defunct, (Dkt. #1 at 26), and AdvoCare has been extensively sanctioned, reformed, and monitored for compliance, (Dkt. #15, #16).

---

[4] "The McDaniels . . . continued to engage in deception until AdvoCare abandoned its multi-level marketing structure in July 2019 during its negotiations with the FTC." (Dkt. #1 at 26).

Finally, the FTC has not alleged—either in the initial Complaint filed in October 2019 or in any amended pleadings since that time—that either the MLM is still operating or that the McDaniels are otherwise continuing to engage in misconduct after July 2019.

## C. Past Violations May Sometimes Give Rise to an Inference of Ongoing or Future Violations, but the FTC has not Plausibly Alleged that Such is the Case Here.

Section 13(b) generally cannot be used to remedy past violations. *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985). However, a plaintiff may state a plausible claim under Section 13(b) by showing that a past violation or series of past violations is likely to recur. *Id.* In some instances, courts have found that an extensive history of past violations is itself sufficient to create an inference of ongoing violations. *See, e.g.*, *FTC v. GTP Mktg., Inc.*, No. 4-90-123-K, 1990 WL 54788, at *5 (N.D. Tex. Mar. 15, 1990) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987)) ("An extensive history of violations does beget an inference that future violations are likely to occur."). The Fifth Circuit, however, has held merely that past violations may, but do not necessarily, support an inference of future substantive violations. *SEC v. First Fin. Grp. Tex.*, 645 F.2d 429, 434 (5th Cir. 1981) (holding in an analogous context that finding a reasonable likelihood of future securities-law violations requires "proof of past substantive violations *that indicate* a reasonable likelihood of future substantive violations." (emphasis added)).

In each of the above cases, the recurrence of violations was at least possible, and in some instances likely, because the channels of misconduct utilized by the defendants remained open—*i.e.*, free and clear of government sanction—upon filing

12

of the litigation. *See, e.g.*, *Odessa*, 833 F.2d at 176–77. In *Odessa*, for instance, the defendant warehouse co-op was still fully operational at the outset of litigation. *Id.* Moreover, while the defendant stated an intent to comply with sanitation laws, it continued to manage its own sanitation practices free of government intervention. *Id.* Absent such intervention, and given the defendant's history of violations, the court held that "serious questions remain[ed]" as to whether the defendant's violations would recur or continue. *Id.*

Here, by contrast, at the outset of litigation and pursuant to FTC intervention, the McDaniels' channel of misconduct was either permanently defunct (in the case of the MLM program) or reformed, lawful, and monitored for compliance (in the case of AdvoCare more broadly). To this end, the FTC not only fails to adequately allege ongoing or future misconduct by the McDaniels but appears to affirmatively concede that the channels through which the McDaniels engaged in misconduct are permanently closed. (Dkt. #1 at 26); *see also* (Dkt. #2, #15, #16). Therefore, under the circumstances, an inference of present or future violations by the McDaniels is unsupported.

## IV. CONCLUSION

The FTC is authorized to bring an action under Section 13(b) of the FTC Act only when there is "reason to believe" that a defendant is currently engaged in, or about to engage in, conduct violating the Act. 15 U.S.C. § 53(b). Here, each of the FTC's factual allegations pertains only to *past* misconduct by the McDaniels. While courts may sometimes infer ongoing or future violations based on an extensive history of past violations, here such an inference is improper because the sole channel

through which the McDaniels allegedly engaged in violations—AdvoCare—agreed to abandon its MLM program entirely (as well as all other allegedly unlawful practices) and subject itself to wide-ranging government monitoring for compliance. This fundamental transformation began with the termination of AdvoCare's MLM program in July 2019 and culminated in AdvoCare's settlement with the FTC on the day of the Complaint's filing, of which the Court takes judicial notice. Under the circumstances, the FTC has failed to provide plausible factual allegations that there is reason to believe that the McDaniels are currently violating the FTC Act or are about to violate the Act.

Finally, the FTC has filed with the Court a Motion to Exclude, (Dkt. #23), arguing that certain documents, legal arguments, and factual allegations presented in the McDaniels' Reply Brief, (Dkt. #20), should be excluded from consideration. In resolving the McDaniels' dismissal motion, the Court did not consider or rely upon any of the arguments, alleged facts, or documents complained of in the FTC's Motion to Exclude. For this reason, the Court finds that the FTC's Motion to Exclude should be DENIED as moot.

It is therefore **ORDERED** that Defendants Diane McDaniel's and Danny McDaniel's Motion to Dismiss, (Dkt. #17), is **GRANTED**. The Federal Trade Commission's claims against the McDaniels, *see* (Dkt. #1), are hereby **DISMISSED without prejudice**.[5] It is further **ORDERED** that the FTC is granted leave to

---

[5] Because the Court dismisses the claims asserted against the McDaniels by the FTC, the Court need not address the parties' arguments on the scope of the remedies that would be available if the FTC's claims against the McDaniels were successful.

replead its claims by filing an amended complaint, with such amended complaint to be filed within thirty (30) days from the date of the issuance of this Order.

It is further **ORDERED** that the FTC's Motion to Exclude is **DENIED as moot**.

It is further **ORDERED** that all other motions pending before the Court are **DENIED as moot**.

**So ORDERED and SIGNED this 16th day of November, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE